## Reincorporation of Beneficial Society

MICHAEL J. STACK, JR., Deputy Attorney General and ANNE X. ALPERN, Attorney General, September 16, 1960.—You have asked our advice in regards to the State Mutual Benefit Society, hereinafter called the "Beneficial Society," a beneficial society regulated by your department under the act popularly known as the Beneficial Societies Act.[1]

The Beneficial Society seeks to reincorporate as a stock insurance company of the class known as limited life insurance companies in accordance with the procedure set forth in the Act of June 28, 1951, P. L. 941, 40 PS §623.1, et seq.[2]

---

[1] Act of June 4, 1937, P. L. 1643, 40 PS §1101, et seq.

[2] Section 29, this act, 40 PS §623.2, provides in part as follows:
"Any such corporation . . . desiring to reincorporate, . . . under the provisions of this act, shall proceed in the following manner, . . . the directors of such corporation . . . may make articles of association as provided by law for the incorporation of insurance

You asked advice as to whether any of the constitutional rights of the members of the Beneficial Society will be violated by permitting the reincorporation, and, inferentially, whether any provisions of the law relating to the Beneficial Society have been violated.

As the society is in violation of a basic provision of The Insurance Company Law of 1921, this application cannot be processed at this time.

The relevant facts are these: The society was originally organized under the Act of April 29, 1874, P. L. 73. The purposes for which it was organized were

companies, *upon which articles shall be had the same proceedings as provided by law for the incorporation of new insurance companies; . . .*" (Italics supplied.)

Further, section 211 of the Beneficial Societies Act, section 3(D), 40 PS §1103, states that every beneficial society shall be run and regulated in accordance with the provisions provided by existing law relating to insurance companies. The Insurance Company Law of 1921, Act of May 17, 1921, P. L. 682, 40 PS §401, provides that the Insurance Commissioner, if he approves the articles, shall submit the articles of agreement to the Attorney General for examination. If the Attorney General finds the articles of agreement to be in accordance with the provisions of this act, and not inconsistent with the Constitution of this Commonwealth and of the United States, he certifies them to the Governor for approval.

Section 211 reads as follows:

"The subscribers to the articles of agreement of any insurance company shall . . . forward the same in duplicate to the Insurance Commissioner, who shall, *in case he approves of the same,* certify in duplicate that all of the requirements of this act in relation to the incorporation of insurance companies have been complied with. The Insurance Commissioner shall submit said articles of agreement to the Attorney General for examination; and if he finds the same in accordance with the provisions of this act, *and not inconsistent with the Constitution of this Commonwealth and of the United States,* he shall certify the same in duplicate to the Governor, with his approval endorsed thereon. . . ." (Italics supplied.)

stated in its charter to be "for purposes beneficial to the members of the said corporation from funds collected therein to be used in assisting said members in time of sickness or disability and in aiding their families in case of death." The Beneficial Society is now regulated by the Beneficial Societies Act, supra.

The Beneficial Society has assets in excess of $2,000,-000. The financial statement as of December 31, 1959 discloses a surplus of approximately $171,000. In addition to the surplus, the Beneficial Society has voluntarily established certain reserve accounts, not required by applicable statute, of approximately $375,000. These reserve accounts are not related to reserve liability required to be set up under section 5, as amended, of the Beneficial Societies Act, 40 PS §1105.

Many of the members of this society are from lower income groups in the large urban areas of Philadelphia and Pittsburgh. The maximum benefits payable on a life policy are $250 and there are other policies with lesser principal sums ranging down to $50. Most of this insurance is of the type in which the premiums are collected weekly by representatives of the society, commonly referred to as industrial insurance.

The Beneficial Society has established two general types of policies. The first is characterized as "nonparticipating." Members holding such policies are specifically excluded from participating in the surplus of the Beneficial Society. The other type of policy is silent as to participation by the policyholder in the surplus of the Beneficial Society. Approximately 20 percent of the policyholders fall into the last mentioned class.[3]

---

[3] If the same rate is charged both classes this may constitute unfair discrimination prohibited by section 353, as amended, 40 PS §477 (a), of The Insurance Company Law. Under this section the Insurance Commissioner may suspend the license of any offending association. The pertinent provision of the act provides:

Section 2 of the reincorporation act, supra, 40 PS §623.2, requires that the officers of the beneficial society obtain the consent of the majority of the members to the proposed reincorporation. This has been done through the device of circulating proxies. In response to inquiries from your department, the officers of the Beneficial Society have indicated that, if and when the reincorporation is approved, approximately 20 percent of the surplus will be distributed to the second class of policyholders referred to above and nothing will be distributed to the first group. In response to further inquiries from your department, these officers have indicated that they will, following reincorporation, preserve the balance of undistributed surplus intact for a period of 10 years.

The proposed articles of agreement reveal that substantially all the officers of the Beneficial Society will become the officers of the new stock company. Further, there will be no public offering of the stock of the company being formed either to the public generally or to the members of the Beneficial Society specifically. In the reasonable course of events, it can be anticipated that the officers of the Beneficial Society will become the sole stockholders of the proposed new limited life stock company.

As has been set forth above, the Beneficial Society has voluntarily established reserves beyond those legally required by law of approximately $375,000. This amount, by action of the board of directors of the new company, could be transformed from reserves to surplus. Thus, on reincorporation, the new company could have a surplus available for distribution to its share-

---

"Unfair discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of life, health and accident insurance . . . or in the benefits payable thereon, or in any of the terms or conditions of such policy, or in any other manner whatsoever, is prohibited. . . ."

holders of $550,000. In accumulating these excess reserves, the company has violated The Insurance Company Law.

Section 429 of the Act of May 17, 1921, P. L. 682, 40 PS §614, provides:

"Any mutual life insurance company, incorporated under the laws of this Commonwealth and transacting business therein, may establish and maintain, . . . a surplus . . . not in excess of ten per centum of its reserve, or one hundred thousand dollars, whichever is greater, and the excess of the market value of its securities over their book value."

The act further provides:

"For cause shown, the Insurance Commissioner may, at any time, permit any corporation to accumulate and maintain a surplus . . . in excess of the limit above mentioned for a prescribed period, not exceeding one year in any one permission, by filing in his office a decision stating his reasons therefor and causing the same to be published in his next annual report."

The legally required reserves of the mutual are $1,425,501. Ten percent thereof totals approximately $143,000. The excess of the market over book value of the securities in which the reserves are invested amounts to $72,328.05. The permission of the Insurance Commissioner to accumulate surplus beyond that legally authorized has not been sought nor has it been given. Accepting the company's statement of its surplus at its face value of $170,000, and adding the excess reserves to this figure, the violation is evident. This provision of the act was intended to reach exactly this kind of situation which has here developed, namely, the accumulation of surplus to the detriment of the members of the mutual. As the administrative officer charged with the execution of the laws of this Commonwealth relating to insurance, you have the duty to force compliance with the violated section of

the act. In view of the violation of section 424 of The Insurance Company Law of 1921, the application for reincorporation should be set aside and your department take appropriate action directed at bringing this company into compliance with the laws governing its operations.

This department deems it necessary to call your attention to its opinion that in any event before "reincorporation" may take place a portion or all of the surplus over and above the allowable 10 percent not distributed to the policyholders as dividend or rebate, would be escheatable to the Commonwealth, provided, of course, the whereabouts of those policyholders were unknown for the prescribed statutory period of seven years.

Accordingly, it is our opinion, and you are advised that the articles of agreement are not in accordance with the provisions of The Insurance Company Law of 1921, and approval of the proposed reincorporation should be withheld until this condition has been corrected subject to the limitation relating to escheat set forth above.